UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



J. ALEXANDER JONES,

Plaintiff,

v.

Action No. 3:12–CV–217

IMAGINARY IMAGES, INC. *et al.*,

Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss Pursuant to Rule 12(b) (ECF No. 12), jointly filed by defendants Imaginary Images, Inc. ("Imaginary Images" or the "Company"), Paper Moon-Downtown, Paper Moon II-Southside ("Paper Moon-Southside"), James Elliot, and Amanda Dixon (collectively "Defendants").[1] On July 17, 2012, the Court held a hearing on the Motion. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss. The Court also addresses various other motions filed by the parties.

### I.    BACKGROUND

Pro se Plaintiff J. Alexander Jones alleges the following in his Amended Complaint. On or about November 20, 2010, during regular business hours at Plaintiff's previous place of employment, The Mansion Room at Fielden's, Plaintiff was approached by a co-worker and staff member, James Elliot, who was also an employee of Imaginary Images and worked

---

[1] The remaining defendants named in the action are Michael Mathena, Craig Bain, Samuel Shelton, Kyle Chastain, and Michael McGuire.

at its Paper Moon-Downtown location. Elliot "offered [Plaintiff] the employment positions of DJ (e.g. 'Disk Jockey'), Promoter, and MC (e.g. 'Master of Ceremonies,' 'Stage Announcer') for Imaginary Images, Inc. /Paper Moon-Downtown." (Pl.'s Am. Compl. ¶ 14.) Elliot claimed that he possessed hiring authority and that

> he was taking a big risk by hiring a Black man based on his knowledge of the Company's upper management and ownerships [sic] viewpoints and treatments of harassment in the forms of racism, discrimination, and prejudice towards Black men. Mr. Elliot also stated that [Plaintiff's] role in employment would assist to positively change the Company's image due to their known background of racism.

(Pl.'s Am. Compl. ¶ 14.) Plaintiff claims that he accepted employment at that point, and Elliot directed him to report to Paper Moon-Downtown on or about Monday, November 22, 2010, at the beginning of the night shift to begin employment training.

Plaintiff alleges that he reported on November 22, 2010, as directed and told Elliot that he wanted to complete an employment application "so that he may receive a statement to certify that he had been hired, along with his job titles, duties, and the terms and conditions of his employment." (Pl.'s Am. Compl. ¶ 15.) Elliot refused Plaintiff's request but instead offered verbal certification that Plaintiff had been hired. Plaintiff then requested to see Elliot's manager, Amanda Dixon, who "also stated that it was unnecessary for [Plaintiff] to complete an employment application [and] . . . verified her awareness of [Plaintiff's] hiring." (Pl.'s Am. Compl. ¶ 15.)

Plaintiff alleges that his "employment training was interrupted several times by [an] unidentified female staff who commented on how amazed they were at the sight of a Black male DJ's presence." (Pl.'s Am. Compl. ¶ 15.) She also told Plaintiff that "the Company's ownership and some upper management 'does not like Black men' and estimated that

2

[Plaintiff] would not have employment once the [C]ompany's ownership or upper management discovered that he was employed as a DJ based on his race." (Pl.'s Am. Compl. ¶ 15.)

Plaintiff further alleges that during training Elliot often used offensive language and made racial jokes that included words such as "N****r," "Coon," and "Slave." (Pl.'s Am. Compl. ¶ 16 (internal quotation marks omitted).) According to Plaintiff, Elliot instructed him that he was not to act like an "Ignorant n****r" while "participating in any promotional activity involving person-to-person contact" on behalf of the Company. (Pl.'s Am. Compl. ¶ 16 (internal quotation marks omitted).) Elliot also commented that Plaintiff "sounded like a 'n****r from off the streets'" and that "the regular customers noticed his 'street n****r sounding voice,'" which both Elliot and the customers disliked. (Pl.'s Am. Compl. ¶ 16.) Plaintiff alleges that Elliot told him that "he needed to change his voice to sound 'White' in order to better suit him, management, and the customers." (Pl.'s Am. Compl. ¶ 16.) Elliot also instructed Plaintiff "not to play songs by Black musicians" or "Black music" because the customers would be very displeased if they "noticed a Black man playing the songs." (Pl.'s Am. Compl. ¶ 16 (internal quotation marks omitted).) Plaintiff alleges that on one particular night, "a crowd accumulated in the Club, and Mr. Elliot demanded that [Plaintiff] bend down to hide himself from the view of the audience, stating, 'I cannot let the customers see a Black man working in the DJ area.'" (Pl.'s Am. Compl. ¶ 16.)

Plaintiff alleges that Elliot eventually expressed that he thought the Paper Moon-Southside location would be a better fit for Plaintiff because it "is located in a "predominantly Black populated area . . . with the consistency of minority customers." (Pl.'s Am. Compl. ¶ 16.) Elliot instructed Plaintiff to "continue working as a Promoter until he

3

arranged a location transfer with the managers at Paper Moon-Southside." (Pl.'s Am. Compl. ¶ 16.)

Plaintiff alleges that he shared with Dixon "the defamatory language" used by Elliot and Elliot's decision to transfer him to Paper Moon-Southside. (Pl.'s Am. Compl. ¶ 16.) Plaintiff alleges that Dixon "stated that she agreed with Mr. Elliot [sic] decisions and found his language towards [Plaintiff] acceptable and humorous." (Pl.'s Am. Compl. ¶ 16.) Plaintiff alleges that he did as Elliot instructed and "continued his Promoting job until receiving notice from Mr. Elliot to transfer to Paper Moon-Southside." (Pl.'s Am. Compl. ¶ 17.)

According to Plaintiff, on or about November 28, 2010, Elliot contacted him and outlined the details of his transfer to Paper Moon-Southside. Elliot informed Plaintiff that the managers at the Southside location, Craig Bain and Samuel Shelton, "were aware of [Plaintiff's] transfer to Paper Moon-Southside to continue employment and training as a DJ." (Pl.'s Am. Compl. ¶ 17.) Elliot also informed Plaintiff that his "employment training would continue under the guidance of the current Paper Moon-Southside DJ's, Michael McGuire and Brad Sittler, Jr." (Pl.'s Am. Compl. ¶ 17.) Plaintiff alleges that Elliot directed him to report to Paper Moon-Southside on or about November 29, 2010.

Plaintiff alleges that he reported to Paper Moon-Southside on November 29, 2010, as instructed and met with Shelton and Bain "to confirm their knowledge of [Plaintiff's] being scheduled to continue DJ employment training." (Pl.'s Am. Compl. ¶ 18.) Both Shelton and Bain "verbally confirmed his employment and directed him to DJ Michael McGuire to continue leading [his] employment training." (Pl.'s Am. Compl. ¶ 18.)

Plaintiff alleges that McGuire confirmed his knowledge of "[Plaintiff] being hired as a new DJ" and that the training was to continue to that end. Plaintiff also alleges that during

training "McGuire expressed to [Plaintiff] his disbelief in [the] Company allowing a Black male DJ based on his knowledge of the Company's racist, prejudice, discriminatory views and background of mistreatment towards Black men." (Pl.'s Am. Compl. ¶ 18.) Plaintiff also alleges that McGuire "estimated that [Plaintiff's] employment would be terminated once upper management or [C]ompany ownership discovered that a Black male was employed as a DJ for the Club." (Pl.'s Am. Compl. ¶ 18.) Plaintiff further alleges that McGuire "stated that because [Plaintiff] was a Black man he would not be permitted to play certain songs by 'Black musicians' . . . because the customers would react adversely if they noticed a Black male DJ in control." (Pl.'s Am. Compl. ¶ 18.) In addition, McGuire informed Plaintiff that if the club ever got crowded, Plaintiff needed to hide himself in the DJ workspace so that he was not visible. (Pl.'s Am. Compl. ¶ 18.)

Plaintiff alleges that beginning November 29, 2010, he worked on a regular basis at Paper Moon-Southside and was "given false statements and misleading information" about payment dates and employment compensation when he inquired about such matters. (Pl.'s Am. Compl. ¶ 18.) Plaintiff further alleges that between November 29, 2010, and January 14, 2011, he "experienced frequent incidents of harassment and mistreatment in the workplace based on his race and disability in the forms of racism, discrimination, and other abusive methods from staff members and managers." (Pl.'s Am. Compl. ¶ 18.)

Plaintiff further alleges that a management change at Paper Moon-Southside, in which Shelton was terminated and Mathena and Chastain began to manage the night shifts, "brought about an extremely hostile work environment" beginning approximately the week of January 17, 2011. (Pl.'s Am. Compl. ¶ 19.) Plaintiff alleges that he was called "defamatory and highly insulting names by Mr. Mathena and staff, such as 'Retard, stupid,

5

dumba**, and idiot,' with the intentions of inflicting emotional distress based on his disability." (Pl.'s Am. Compl. ¶ 19.) Plaintiff also alleges that Mathena made comments to him about not playing "Black music" and making sure he was not visible when the club was crowded. (Pl.'s Am. Compl. ¶ 19 (internal quotation marks omitted).) Plaintiff further alleges that Mathena made comments through another staff member that Mathena did not like "the sound of [Plaintiff's] Black voice, [Plaintiff] [was] too stupid to work as a DJ, ownership [did] not want a Black male DJ, and [that] Mathena would make sure that [Plaintiff] was not paid for his work, and ultimately fired from Paper Moon-Southside." (Pl.'s Am. Compl. ¶ 19.)

Plaintiff claims that Defendants misled him into believing that he was a hired employee and would be compensated for his services. Moreover, when he complained about not being compensated, he was retaliated against and subject to unfair work conditions and abuse based on his race and disability. In addition, "[d]ifferent work standards were applied to [Plaintiff] in comparison to the other non-Black-DJ's in terms of work concerns like music volume and DJ's voice." (Pl.'s Am. Compl. ¶19.) Plaintiff was also subject to offensive racist conduct and referred to as the "Retarded DJ." (Pl.'s Am. Compl. ¶19 (internal quotation marks omitted).) Plaintiff alleges that he formally complained to management, who responded by "laughing at the complaints." (Pl.'s Am. Compl. ¶19.) Plaintiff alleges that Defendants' actions, which forced him to resign on or about January 20, 2011, constitute a constructive discharge.

On or about March 4, 2011, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter from the EEOC on or about December 31, 2011. (Pl.'s Am. Compl. 5, ¶¶ 12-13.) On March 21, 2012,

Plaintiff filed action in this Court.[2] On April 17, 2012, Plaintiff filed an Amended Complaint alleging claims pursuant to Title I of the Civil Rights Act of 1991; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended; Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended; the Equal Pay Act of 1963 ("EPA"), and the Fourteenth Amendment.[3] Count I alleges employment discrimination based on race, Count II alleges employment discrimination based on disability, Count III alleges employment discrimination with respect to wages, and Count IV alleges a breach of contract claim.

Plaintiff's Amended Complaint specifically names ten defendants: (1) Imaginary Images, (2) Paper Moon-Downtown, (3) Paper Moon-Southside, (4) James Elliot, (5) Amanda Dixon, (6) Michael Mathena, (7) Craig Bain, (8) Samuel Shelton, (9) Kyle Chastain, and (10) Michael McGuire. On May 17, 2012, five of the ten named defendants jointly filed the instant Motion to Dismiss. Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    LEGAL STANDARDS

Rule 12 allows a defendant to raise a number of defenses to a claim for relief at the pleading stage. Among these are the defenses that a court lacks subject-matter jurisdiction over the case, see Fed. R. Civ. P. 12(b)(1), and that the pleadings fail to state a claim upon which the court can grant relief, see Fed. R. Civ. P. 12(b)(6). The standards used to evaluate each defense vary. While a court must typically construe the pleadings of a pro se plaintiff

---

[2] On March 26, 2012, the Clerk filed Plaintiff's Complaint pursuant to an Order (ECF No. 2) entered by this Court granting Plaintiff leave to proceed *in forma pauperis.*

[3] Plaintiff does not any allege any specific Fourteenth Amendment violations in his Amended Complaint. Plaintiff however makes reference to various criminal statutes under which he cannot properly plead claims. Namely, Plaintiff alleges violations of 18 U.S.C. § 1001, 18 U.S.C. § 1038, and 18 U.S.C. § 47. For the reasons stated from the bench during the hearing on the instant Motion, the Court summarily DISMISSES such claims.

liberally, see *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), a court considering a motion to dismiss must still evaluate the pro se plaintiff's pleadings according to the standards developed under Rule 12.

### a. Rule 12(b)(1)

On a motion to dismiss pursuant to Rule 12(b)(1), defendants may attack subject-matter jurisdiction by contending that the complaint fails to sufficiently allege facts upon which the court may make a finding of subject-matter jurisdiction, or they may contend that the jurisdictional facts are untrue. *King v. Riverside Reg'l Med, Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002). In both situations, the burden is on the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

If the defendant asserts that the complaint fails to allege sufficient jurisdictional facts, then the facts alleged in the complaint are assumed to be true. *King*, 211 F. Supp. 2d at 780. "The court construes all facts in favor of the plaintiff, and it relies solely on the pleadings, disregarding affidavits or other materials." *Id.* (citing *Adams*, 697 F.2d at 1219). If, however, the defendant asserts that the jurisdictional facts are not true, "no presumption of truthfulness attaches to the allegations in the complaint, and the trial court must weigh the evidence presented and evaluate for itself the merits of the jurisdictional claims." *Id.* (citing *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 971 n.4 (4th Cir. 1990)).

### b. Rule 12(b)(6)

Where a motion pursuant to Rule 12 (b) (6) contends that a plaintiff's pleadings are insufficient to show entitlement to relief, a court must resolve the motion by reference to the allegations in the complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

The question then before the court is whether the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief" in both "law and fact." *Id.* at 192-93.

The pleadings need not be supported by evidence but must "state a claim for relief that is plausible on its face." *Id.* at 193 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is one that contains more than just "unadorned, the-defendant-unlawfully-harmed-me-accusation[s]." *Iqbal*, 556 U.S. at 678. If the complaint alleges—directly or indirectly—each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

In resolving a 12(b)(6) motion, a court must regard as true all of a plaintiff's well-pleaded allegations, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), as well as any facts that could be proven consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In contrast, the court does not have to accept legal conclusions couched as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. T.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). *See Iqbal*, 556 U.S. at 678. With these principles in mind, in a claim for employment discrimination, "while a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level,'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)).

### III.   DISCUSSION

When a party sets forth a Rule 12(b)(1) defense in addition to other Rule 12 defenses, the court should resolve the 12(b)(1) motion first, because if the court lacks jurisdiction, the remaining motions are moot. *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006).

### a.  Lack of Subject-Matter Jurisdiction – 12(b)(1)

Defendants move for subject-matter jurisdiction dismissal on the basis that Plaintiff fails to assert sufficient jurisdictional facts. Defendants argue that Plaintiff's failure to comply with 42 U.S.C. § 2000e-5 divests the Court of subject-matter jurisdiction over Plaintiff's Title VII and ADA claims. Defendants argue that although Plaintiff alleged that he filed a charge with the EEOC and was issued a right-to-sue letter, he failed to "attach any right to sue letter to his pleadings" or "give the Court any indication of the substance of his EEOC filing." (Defs.' Mem. Supp. 5.) Therefore, Defendants contend that they are prevented from ascertaining whether Plaintiff's right-to-sue letter pertained to his "ADA claims, his racial discrimination claims under Title VII, or one of the other myriad statutory violations mentioned in passing in the Amended Complaint." (Defs.' Mem. Supp. 6.)

Both Title VII and the ADA set forth certain jurisdictional prerequisites that a plaintiff must undergo before pursuing a Title VII claim in federal court. These prerequisites ordinarily are (1) the filing of a timely charge of discrimination with the EEOC within 180 days of the occurrence of the alleged discrimination, or 300 days if the plaintiff has instituted proceedings with a state or local agency; (2) the receiving of a statutory notice of right to sue; and (3) the timely commencement of a lawsuit based on that charge within 90 days of receiving the notice. *See* 42 U.S.C.A. § 2000e-5(e) and (f)(1);

10

42 U.S.C. § 12117(a) (incorporating the procedures set forth in Title VII). A plaintiff's failure to exhaust such administrative remedies "deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

Plaintiff's Amended Complaint alleges that he began employment with Defendants on or about November 20, 2010, was constructively discharged on January 20, 2011. Plaintiff filed his EEOC charge on or about March 4, 2011, received a right-to-sue letter from the EEOC on or about December 31, 2011, and brought action against Defendants on March 21, 2012. Such allegations are sufficient to satisfy the Court that Plaintiff has met the jurisdictional prerequisites for filing his Title VII and ADA claims.[4] Accordingly, the Court finds that Plaintiff alleges sufficient facts to establish the Court's subject-matter jurisdiction, and DENIES Defendants' Motion to Dismiss pursuant to 12(b)(1).

### b. Failure to State a Claim upon Which Relief Can Be Granted – 12(6)(6)

In their joint Motion to Dismiss, Defendants refer to Imaginary Images as "the Corporation" and divides the remaining defendants into two categories: "Location Defendants," which includes Paper Moon-Downtown and Paper Moon II-Southside; and

---

[4] Moreover, in responding to Defendants' Motion to Dismiss, Plaintiff attached his EEOC right-to-sue letter along with his Charge of Discrimination. (ECF No. 20-1.) "[I]n order to determine whether the claim of a pro se plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff." *Armstrong v. Rolm A. Siemans Co.*, No. 97-1222, 1997 U.S. App. LEXIS 31898, at *2-3 (4th Cir. Nov. 13, 1997) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1149-51 (4th Cir. 1978)). Plaintiff's EEOC charge alleged discrimination based on race and disability and basically mirrors in a more abbreviated form the same factual allegations in his Amended Complaint. Plaintiff's EEOC charge includes allegations that he was "not permitted to fill out a job application," "management refused to pay [him] for his labor and services," he was warned against sounding "too Black," he was instructed to "talk while" while DJ'ing, and was ridiculed because of his disability. (ECF No. 20-1, at 2-3.) Plaintiff's EEOC charge also alleged that Defendants' conduct forced him to resign on January 20, 2012. In essence, Plaintiff's EEOC charge and Amended Complaint describe the same conduct and implicates the virtually the same actors.

"Individual Defendants," which includes Elliot, Dixon, and "several other purported staff members." (Defs.' Mem. Supp. 2.) Defendant argues that Plaintiff's claims against the Location Defendants should be dismissed because "the Location Defendants are not jural parties capable of suing or being sued." (Defs.' Mem. Supp. 2.) With respect to the Individual Defendants, Defendants argue that Plaintiff cannot properly state a claim under Title VII or the ADA against those individuals. Each argument is addressed in turn.

### i. Location Defendants

A corporation organized under Virginia law has the power to "[t]o sue and be sued, complain and defend in its corporate name." Va. Code Ann. § 13.1-627(A)(1). It is well-settled that "[a] suit against a corporation in Virginia must be brought against the corporation itself, not against the corporation's trade name or a similar name." *See Harvey v. Mech. Air Servs.*, 69 Va. Cir. 214, 215 (2005) (citing *Leckie v. Seal*, 161 Va. 215, 226-27 (1933); *see also Baldwin v. Norton Hotel, Inc.*, 163 Va. 76, 82-83 (1934) ("A corporation may be known by several names, . . . and a recovery may be had against it in its true name . . . ." (quoting *Langhorne v. Richmond C. R. Co.*, 91 Va. 364, 336 (1895) (internal quotation marks omitted))). *See generally Tate v. Atlanta Oak Flooring Co.*, 179 Va. 365 (1942) (stating that the use of a fictitious name does not create two legal entities but instead allows a single entity to operate under multiple names). Here, Defendant Imaginary Images does business as Paper Moon-Downtown and Paper Moon II-Southside, which Plaintiff concedes are at best "trade names" of Imaginary Images. (*See* Pl.'s Opp'n Defs.' Mot. Dismiss 2.) Thus, while Plaintiff can properly name Imaginary Images in his Amended Complaint, the Court GRANTS Defendants' Motion to Dismiss with respect to Defendants Paper Moon-

Downtown and Paper Moon-II Southside. Both entities shall be DISMISSED from the action entirely.

### ii. Individual Defendants

Title VII and the ADA do not provide a basis for imposing liability on employees in their individual capacities. See *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants . . . for conduct protected by the ADA.")); *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) ("The 1991 amendments further bolster our conclusion that individuals are not liable under [Title VII]. . . . Had Congress felt that individual liability was needed to deter unlawful harassment and intentional discrimination, surely it would have included this remedy in the 1991 Amendments." (internal citations and quotation marks omitted)). Here, as far as the Court can ascertain, Plaintiff attempts to state claims against the named individuals in his Amended Complaint in their individual capacities. Accordingly, the Court GRANTS Defendants' Motion to Dismiss to the extent that Counts I and II are DISMISSED with respect to the Individual Defendants.

### iii. The Corporation

Because the Court DISMISSES all Counts against the Location Defendants and Counts I and II against the Individual Defendants for the reasons stated above, this section

discusses Counts I and II with respect to only Imaginary Images,[5] and Counts III and IV with respect to Imaginary Images and the Individual Defendants.

### 1. Title VII Claim – Count I

While the exact nature of the Title VII claims Plaintiff intends to set forth is not completely discernible from his Amended Complaint, Plaintiff seems to assert at least four Title VII claims based on race: (1) employment discrimination, (2) retaliation, (3) hostile work environment, and (4) constructive discharge. The Court addresses each claim in turn, keeping in mind that at this stage, Plaintiff need not state a prima facie case. Rather, Plaintiff's allegations must allow the Court to reasonably infer the existence of the prima facie elements. *See Coleman*, 626 F.3d at 190.

### a. Employment Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can state a claim of race discrimination "by demonstrating through direct or circumstantial evidence that [race] discrimination motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). The plaintiff "need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor." *See id.* Rather, "it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons." *See id.* (citing 42 U.S.C.A. § 2000e-2(m)).

---

[5] For discussion purposes, "Defendant" refers to Imaginary Images.

14

A liberal construction of Plaintiff's Amended Complaint leads the Court to conclude that Plaintiff pleads sufficient allegations to state a prima facie case of employment discrimination based on race. Plaintiff alleges that Defendant, by its own admission, had a systematic policy of discriminating against African American males with respect to employment and that Defendant would take issue once it discovered that Plaintiff, an African American male, had been hired. Plaintiff also alleges that he was subject to constant racial insults and directives based on his race. Plaintiff also alleges generally that non-Black staff were treated differently and with more favor. Plaintiff further alleges that Defendant failed to properly compensate him for services performed because of his race and that he was constructively discharged as a result of Defendant's conduct. Based on the various allegations of Defendant's constant berating of Plaintiff in the workplace because of his race and the alleged adverse employment action suffered by Plaintiff, the Court finds that a claim of employment discrimination based on race under Title VII can be reasonably inferred from Plaintiff's Amended Complaint.

### b. Retaliation

To state a prima facie case of retaliation under Title VII, a plaintiff must plausibly show that (1) he engaged in protected activity, (2) his employer took some adverse action against him, and (3) a causal connection existed between the protected activity and the adverse action. *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002). Protected activity under Title VII involves opposing discriminatory practices in the workplace. *See* 42 U.S.C. § 2000e-3(a). Here, Plaintiff alleges that he "would formally complain to management about the offensive treatment from staff members only for management to respond by laughing at the complaints [and] retaliat[e] against [him] for making complaints against staff who

15

were otherwise treated with more favor." (Pl.'s Am. Compl. 10.) Plaintiff further alleges that Defendants took adverse action against with respect to his wages and engaged in activity that ultimately led to his constructive discharge. A liberal reading of Plaintiff's Amended Complaint permits a reasonable inference that Plaintiff engaged in protected activity and suffered adverse employment action. However, the Court finds difficulty in concluding that Plaintiff has properly alleged a causal connection between his alleged protected activity and adverse employment action purportedly suffered. Based on Plaintiff's allegations, the actions taken against him by Defendant began before Plaintiff ever complained to management and seemed to have continued thereafter. Nothing in Plaintiff's Amended Complaint raises a reasonable inference that Defendant's conduct was *because of* Plaintiff's engagement in any protected activity rather than simply because of his race. Therefore, to the extent Plaintiff attempts to allege a retaliation claim under Title VII, he has failed to do so.

### c. Hostile Work Environment

Because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 174 (4th Cir. 2009) (quoting *EEOC v. R & R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001)) (internal quotation marks omitted). To properly state a prima facie case of hostile work environment based on race, a plaintiff must show that alleged conduct (1) was unwelcome, (2) resulted because of race, (3) was sufficiently severe or pervasive to alter the conditions of his employment, and (4) was imputable to his employer. *Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009). In analyzing whether harassment is severe and pervasive, courts generally consider the "frequency of the

16

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993))). Here, the Court is satisfied that Plaintiff has sufficiently pled facts to show that Defendant's discriminatory conduct based on his race was sufficiently severe or pervasive to state a hostile work environment claim. Indeed, Plaintiff's Amended Complaint is replete with factual allegations that he was subject to repeated and blatant harassment based on his race. Plaintiff also alleges that he complained to management about how he was being treated, which indicates that he found Defendant's conduct to be objectionable. Plaintiff further alleges that Defendant's conduct grew so intolerable that he was forced to resign, which the Court finds reasonable in light of Plaintiff's allegations of how he was being treated in the workplace. Therefore, the Court finds that Plaintiff's allegations raise a plausible inference of a hostile work environment claim.

### d.  Constructive Discharge

"[A]n employee is constructively discharged 'if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit.'" *Whitten v. Fred's Inc.*, 601 F.3d 231, 248 (4th Cir. 2010) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995)). Thus, to state a prima facie case of constructive discharge based on race, a plaintiff must show two elements: "(1) deliberateness of the employer's actions and (2) intolerability of working conditions." *Whitten*, 601 F.3d at 248 (internal quotation marks omitted). An employer's actions are

17

deliberate only if they "were intended by the employer as an effort to force the plaintiff to quit." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 272 (4th Cir. 2001). Determination of whether an employment environment is intolerable is based on the objective perspective of a reasonable person. *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) (internal quotation marks omitted).

The Court is satisfied that Plaintiff's allegations set forth a sufficient basis to find that his work conditions would have been objectively highly intolerable to a reasonable person. Moreover, a liberal construction of Plaintiff's Amended Complaint leads the Court to find that Plaintiff has sufficiently shown "deliberateness" on Defendant's part. In evaluating whether Plaintiff has shown the requisite "deliberateness" or intent, the Court need not search for "smoking gun evidence of employer intent." *See Whitten*, 601 F.3d at 249. Rather, "an employer's intent can be proved by inference, . . . for example, showing that the employer failed to act in the face of known intolerable conditions." *See id.* (internal quotation marks omitted). Here, Plaintiff alleges that he reported various instances of offensive treatment based on his race and the overall intolerable conditions of his employment to management. In response, management seemed to ratify the offensive conduct and ultimately failed to address Plaintiff's concerns in any meaningful way, which raises a reasonable inference that Defendant acted in a manner to "deliberately" force Plaintiff's resignation. Moreover, Plaintiff alleges that at least one manager, Mathena, indicated that he did not think Plaintiff was fit for the Company and would make sure that

18

Plaintiff was fired from the Company. Therefore, the Court finds that Plaintiff has properly stated a claim of constructive discharge. Accordingly, the Court DENIES Defendants' Motion to Dismiss Count I of Plaintiff's Amended Complaint.

### 2. ADA Claim – Count II

The ADA provides in relevant part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff claims that Defendant discriminated against him with respect to various aspects of his employment because of his disability and ultimately constructively discharged him because of his disability. For Plaintiff to avail himself of the protections under the ADA, Plaintiff must first demonstrate that he suffers from a disability. *See EEOC v. Stowe-Pharr Mills, Inc.,* 216 F.3d 373, 377 (4th Cir. 2000) (setting out prima facie elements of ADA disability discrimination claim). To qualify as disabled under the ADA, an individual must either "(1) [suffer] from a physical or mental impairment that substantially limits . . . a major life activity; (2) [have] a record of such impairments; or (3) [be] regarded as having such an impairment." 42 U.S.C. § 12102(1). Here, Plaintiff fails to allege sufficient facts to meet this standard.

While Plaintiff alleges that Defendants called him "highly insulting names" such as "Retard, stupid, dumba**, and idiot," Plaintiff does not identify how any purported disability substantially limited any major life activity. (Pl.'s Am. Compl. ¶ 19.) Moreover, Plaintiff fails to sufficiently allege that Defendant discriminated against him because of any such disability. Ultimately, Plaintiff's Amended Complaint lacks sufficient allegations to

show that he is disabled under the ADA, that Defendant regarded him as having an actual or perceived impairment, or that Defendant subjected him to action that is unlawful under the ADA because of any such impairment. Accordingly, the Court GRANTS Defendants' Motion to Dismiss with respect to Plaintiff's ADA claim and DISMISSES Count II of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted.

### 3. Employment Discrimination (Wage) – Count III

Plaintiff alleges that Defendant discriminated against him with respect to his wages. Plaintiff specifically cites the EPA ("29 U.S.C. § 206 (a) (b)") as the basis for relief. (Pl.'s Am. Compl. ¶ 56.) The EPA provides:

> No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. §§ 206 (a), (d). To state a prima facie case under the EPA, a plaintiff must show that he received less pay than a female co-employee performing work substantially equal in skill, effort, and responsibility under similar working conditions. *Wheatley v. Wicomico County, Md.*, 390 F.3d 328, 331 (4th Cir. 2004), *cert. denied*, 544 U.S. 1032 (2005); *Houck v. Virginia Polytechnic Inst.*, 10 F.3d 204, 206 (4th Cir. 1993). Here, because Plaintiff's Amended Complaint makes no allegation whatsoever that he was paid a wage lower than any female co-employee, he cannot sustain a claim under the EPA.

Moreover, to the extent that Plaintiff attempts to allege a claim of unpaid wages under the FLSA, he has failed to do so. Plaintiff fails to indicate the compensation he was

entitled to or the number of hours he worked without compensation. The Court therefore finds that Plaintiff's Amended Complaint is devoid of facts to properly state an FLSA unpaid wages claim. *See Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 340 (11th Cir. 2011) ("To establish a prima facie case of an FLSA violation, a complainant must show 'as a matter of just and reasonable inference' the amount and extent of his work in order to demonstrate that he was inadequately compensated under the FLSA" (quoting *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 (11th Cir. 1993))); *Williams v. Secure Res. Communs.*, 11 Civ. 03986 (PAC) (THK), 2012 U.S. Dist. LEXIS 97044, at *4 (S.D.N.Y. July 12, 2012) ("To state a claim under the FLSA, a plaintiff must allege, at a minimum, the approximate number of unpaid hours worked."); *Walker v. Serv. Corp. Int'l*, No. 4:10CV00048, 2011 U.S. Dist. LEXIS 39856, at *19-20 (W.D. Va. Apr. 12, 2011) ("The Complaint should . . . contain factual allegations about when the alleged unpaid wages were earned . . . or the number of hours allegedly worked without compensation—the heart of the [FLSA] claim."); *see also Harder v. ARCO Welding, Inc.*, No. 3:11CV396, 2011 U.S. Dist. LEXIS 132615, at *10-11 (E.D. Va. Nov. 16, 2011) (finding FLSA claim that stated compensation rate and hours worked without compensation sufficient to survive 12(b)(6) motion to dismiss). Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's employment discrimination wage claim and DISMISSES Count III of Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted.

### 4. Breach of Contract – Count IV

Virginia has long recognized the validity of oral employment contracts in certain contexts. *See e.g., Smith v. Arthur H. Fulton, Inc.*, 4 Va. Cir. 244, 244 (Va. Cir. 1984); *Windsor v. Aegis Services, Ltd.*, 691 F. Supp. 956, at *11-12 (E.D. Va. 1988).

> Virginia's statute of frauds provides that an oral contract "that is not to be performed within a year" is generally unenforceable. *See* Va. Code Ann. § 11-2(8); *Murphy v. Nolte & Co.*, 226 Va. 76, 307 S.E.2d 242, 245 (Va. 1983). However, when a contract "by its terms, or by reasonable construction, . . . can be fully performed on one side within a year," "the contract is not within the statute [of frauds] and need not be in writing." *Silverman v. Bernot*, 218 Va. 650, 239 S.E.2d 118, 121 (Va. 1977). This is true even though the possibility of performance under the contract's own terms is due solely to the "occurrence of some improbable event, [such] as the death of the person referred to [in the agreement]." *Id.; see also Falls v. Virginia State Bar*, 240 Va. 416, 397 S.E.2d 671, 672-73 (Va. 1990) (contract is enforceable if it expressly provides that the occurrence of [such an event] would constitute full performance"). So long as a contract specifies that it will stay in force for the lifetime of an individual, the contract falls outside the statute of frauds.

*See Adams v. Greenbrier Olds/GMC/Volkswagen*, 1999 U.S. App. LEXIS 1140, at *22-23 (4th Cir. Jan. 28, 1999). "Under Virginia law, 'where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will.'" *Lawrence v. Mars, Inc.*, 955 F.2d 902, 907(4th Cir. 1992) (quoting *Miller v. SEVAMP, Inc.*, 234 Va. 462, 465 (1987)); *Smith*, 4 Va. Cir. at 245. At-will employment contracts fall outside of the statute of frauds. *TradeStaff & Co. v. Nogiec*, 77 Va. Cir. 77, 80 (2008).

Under Virginia law, a party claiming breach of contract must establish three elements to prevail: (1) a legally enforceable obligation under a contract, (2) a breach of that obligation, and (3) injury or damage to the plaintiff flowing from that breach. *Eplus Technology, Inc. v. Nat'l R.R. Passenger Corp.*, 407 F. Supp. 2d 758, 761 (E.D. Va. 2005).

Here, Plaintiff claims that Defendants made several representations that he was hired and that he would be compensated for his services, which led Plaintiff to believe that he actually had an employment position with Imaginary Images. According to Plaintiff, he was invited to work, underwent employment training, and given verification that he would be paid for the services he performed. Plaintiff claims that he "performed several work shifts," based on a belief that he would be "compensated for employment training and

22

hours worked" because of the "contractual natured agreement" that he believed was established between him and Defendants. (Pl.'s Am. Compl. ¶¶ 59-60.) Therefore, Plaintiff seems to plead sufficient allegations for the Court to reasonably infer the existence of an oral employment contract. Nonetheless, the Court finds that Plaintiff's breach of contract claim fails.

As stated above, Plaintiff fails to properly state an unpaid wages claim under the FLSA. It is for those same reasons that Plaintiff is unable to properly state a breach of contract claim under state law. Plaintiff fails to set out any specific terms of the alleged employment contract. Namely, Plaintiff fails to state the agreed-to compensation and the number of hours for which he was not compensated. Therefore, Plaintiff has not alleged sufficient facts to sustain a breach of contract claim. *See Walker*, 2011 Dist. LEXIS 39856, at * 26-27 ("[A] wage and hour complaint, whether brought under the FLSA or as a breach of contract action, must at least allege approximate wages.").

Moreover, while Plaintiff does not specifically allege his claim of wage discrimination under the FLSA, it appears that Plaintiff's breach of contract claim would be preempted by the FLSA. In *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007), the Fourth Circuit held that the FLSA preempts duplicative state law claims. The gravamen of Plaintiff's breach of contract claim is that he was not compensated for hours he worked while employed with Imaginary Images. Such a claim relies on establishing a violation of the FLSA, which Plaintiff's Amended Complaint fails to do.[6] Accordingly, the Court GRANTS

---

[6] It should be noted that Plaintiff's Amended Complaint also fails to allege any entitlement to compensation greater than that provided under the FLSA, for had Plaintiff done so, his claim could likely escape preemption by the FLSA. *See Anderson*, 508 F.3d at 193 ("[T]he FLSA contains a 'savings clause' that expressly allows states to provide workers with more beneficial minimum

Defendants' Motion to Dismiss Plaintiff's breach of contract claim for failure to state a claim upon which relief can be granted, and DISMISSES Count IV of Plaintiff's Amended Complaint.

### IV.   ADDITIONAL MOTIONS

The parties have filed various other motions in the action which the Court now addresses.

#### a.  Plaintiff's Motions

On June 28, 2012, Plaintiff filed a Motion for Leave (ECF No. 22) and a Motion for Stay of Proceedings (ECF No. 23). Plaintiff states identical grounds for each motion and moves for the requested action so that the parties can undergo settlement discussions. Based on the parties' briefing and information deduced from the hearing on Defendants' Motion to Dismiss, the Court finds that Plaintiff's motions are baseless and should therefore be DENIED.

#### b.  Defendants' Motion for Rule 11 Sanctions

On June 29, 2012, Defendants filed a Motion for Sanctions (ECF No. 24), arguing that Plaintiff's Amended Complaint is so rife with conclusory statements and devoid of factual support that the Court should impose sanctions against Plaintiff under Rule 11 of the Federal Rules of Civil Procedure. Although Rule 11 applies to both represented and

---

wages and maximum workweeks than those mandated by the FLSA itself."); *see also Walker*, 2011 U.S. Dist. LEXIS 39856, at *19-20 (citing 29 U.S.C. § 218(a)). This, of course, would practically be an impossible hurdle for Plaintiff to clear because Virginia's minimum wage is the same as the federal minimum wage under the FLSA. Va. Code Ann. § 40.1-28.10 ("Every employer shall pay to each of his employees wages at a rate not less than the federal minimum wage and a training wage as prescribed by the U.S. Fair Labor Standards Act."). Moreover, the Court attempted to glean further information from Plaintiff in support of his claims during the hearing on the Motion. In response, Plaintiff indicated that he wished to rely on the allegations set forth in his Amended Complaint and briefing. Therefore, the Court finds that any additional briefing or amendment would be futile.

unrepresented parties, *Johnson v. Lyddane*, 368 F. Supp. 2d 529, 532 (E.D. Va. 2005) (citing *Harmon v. O'Keefe*, 149 F.R.D. 114, 116 (E.D. Va. 1993)), Plaintiff's pleadings and briefing in the action are not the proper subject of sanctions. Given the Court's decision on Defendants' Motion to Dismiss, the Court does not deem Plaintiff's allegations in his Amended Complaint or subsequent filings the type that Rule 11 is intended to sanction. Therefore, the Court DENIES Defendants' motion for sanctions.

### c. Motions to Dismiss

Defendants Samuel Shelton and Kyle Chastain, both named in Plaintiff's Amended Complaint filed motions to dismiss. Shelton, proceeding pro se, filed a motion to dismiss (ECF No. 26), arguing that he had no authority with respect to any DJ positions, which he claims were handled by upper-management. Chastain, who is now represented by counsel who filed the instant joint Motion to Dismiss on behalf of the various other Defendants, moves for dismissal on the same grounds stated in the joint Motion. (ECF No. 34.) For the reasons stated above, the Court GRANTS the motions to dismiss by Shelton and Chastain, and DISMISSES all claims in Plaintiff's Amended Complaint with respect to all named individual defendants (not Imaginary Images). *See* 28 U.S.C. § 1915(e)(2) (the court "shall dismiss" a complaint filed *in forma pauperis* at any time if the complaint "fails to state a claim on which relief may be granted"); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006).[7]

### V.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

---

[7] Accordingly, the Court finds that all claims with respect to defendants Craig Bain, Michael McGuire, and Michael Mathena should also be DISMISSED.

Defendants' Motion to Dismiss. Specifically, the Court GRANTS Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) with respect to Counts II, III, and IV and DISMISSES those Counts against all Defendants including those not joined in the instant Motion; DENIES Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) with respect to Count I against Defendant Imaginary Images; and DENIES Defendants' Motion to Dismiss pursuant to Rule 12(b)(1). Additionally, the Court DENIES Plaintiff's Motion for Leave, Plaintiff's Motion for Stay of Proceedings, and Defendants' Motion for Rule 11 Sanctions.

Plaintiff is hereby notified that if he wishes to appeal the Court's decision, he must file a notice of appeal with the Clerk of this Court within thirty (30) days of the date of the accompanying Order, in accordance with Federal Rules of Appellate Procedure 3 and 4. Failure to timely file a notice of appeal may result in Plaintiff's loss of his right to appeal.

Let the Clerk send a copy of this Memorandum Opinion to all parties and counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
United States District

ENTERED this _8th_ day of August 2012.

26